PATRICK D. ROBBINS (CABN 152288)
Acting United States Attorney

MARTHA BOERSCH (CABN 126569)
Chief, Criminal Division

EMILY R. DAHLKE (CABN 322196)
Assistant United States Attorney

   1301 Clay Street, Suite 340S
   Oakland, California 94612
   Telephone: (510) 637-3705
   FAX: (510) 637-3724
   Emily.dahlke@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 4:25-mj-70526 MAG |
| Plaintiff, | **UNITED STATES' MOTION FOR DETENTION** |
| v. | Date: May 13, 2025<br>Time: 10:30 a.m.<br>Court: Honorable Kandis A. Westmore |
| YENY FERNANDEZ-REYES<br>a/k/a Karen Pineda<br>a/k/a Karen Vulzza Pineda Bonilla | |
| Defendant. | |

## I. INTRODUCTION

Yeny Fernandez-Reyes ("Defendant") once again finds herself in a position she knows all too well– as a defendant in a federal drug trafficking case. On February 6, 2025, and March 26, 2025, Defendant sold methamphetamine and fentanyl, respectively, to an Under-Cover officer ("UC") in the Tenderloin and in Oakland. This drug trafficking transpired while Defendant was on federal supervised release, after suffering two federal drug trafficking convictions in this district and serving a 27-month prison sentence. She was released from prison in November 2023. Not only does she have prior federal convictions, but she has been arrested over a dozen other times, many of which were drug trafficking arrests in San Francisco. Defendant is a recidivist drug trafficker who has breached the Court's trust by continuing to traffic fentanyl and methamphetamine while under federal supervision. Given the nature and circumstances of the offense, Defendant's criminal history and history of absconding while on federal pre-trial release, she presents a public safety risk and a flight risk that cannot be mitigated by conditions of release. The government respectfully requests she be detained.

## II. FACTUAL BACKGROUND

**A.     Charged Conduct – February 6, 2025 and March 6, 2025 Drug Sales**

On February 6, 2025, at approximately 10:27 p.m. the UC drove to the Tenderloin neighborhood in San Francisco. Defendant approached the UC's vehicle at approximately 3:30 pm, and asked the UC "what do you want". Defendant proceeded to sell the UC approximately 5 grams of methamphetamine in exchange for $100. She also provided her cell-phone number to the UC, for ease of arranging future drug sales.

On February 8, 2025, the UC texted Defendant asking if she remembered him and requesting to purchase additional drugs. Defendant responded by stating, "yes of course. I'm here if you want to come".

On March 26, 2025, Defendant engaged in second drug sale to the UC, this time selling the UC fentanyl in Oakland. On that date, Defendant and the UC communicated via phone and arranged to meet in Oakland so that Defendant could sell the UC fentanyl. On that date, Defendant arrived at the location and entered the UC's front passenger vehicle door. She then gave the UC approximately 69 grams of fentanyl in exchange for $2,500.

**B.     Association with Another Drug Trafficker**

Law enforcement obtained a GPS Ping Location warrant for Defendant's phone. On March 10, 2025, law enforcement observed Defendant enter her residence. That same day, law enforcement also saw an individual identified as Jexcer Martinez-Torres exit the residence. Martinez-Torres has an extensive criminal history related to narcotics trafficking in the Bay Area. On March 26, 2025, law enforcement observed the Defendant's phone move from the Bay Area to Utah and Colorado before returning to California on March 28, 2025. Law enforcement later learned that on March 28, 2025, Jexcer Martinez-Torres was arrested in Utah for outstanding arrest warrants for narcotics trafficking in San Francisco. Defendant, along with another individual, posted bail for Martinez-Torres and retrieved the vehicle he was arrested in from the impound yard. On April 24, 2025, law enforcement observed Martinez-Torres at an address in the Bay Area that Defendant's phone repeatedly traveled to. On or about April 25, 2025, Martinez-Torres was arrested and booked in San Francisco jail for having a concealed firearm in a vehicle and multiple charges of drug trafficking.

**C.     Prior Federal Conviction – 4:21-CR-00250-YGR; Possession with Intent to Distribute Fentanyl**

Defendant's conviction in the above case relates to conduct regarding her drug trafficking in the Tenderloin in 2020. From May 2020 through December 17, 2020, Defendant was arrested nearly every month for drug trafficking, for a total of six arrests. On May 3, 2020, Defendant sold heroin and methamphetamine to a UC and was arrested. On August 3, 2020, SFPD observed Defendant engage in a number of hand-to-hand drug transactions in the Tenderloin. She was arrested and possessed methamphetamine, heroin, cocaine, and fentanyl. She was arrested again on September 17, 2020, when SFPD observed her engage in a hand-to-hand drug transaction in the Tenderloin. She was arrested and possessed fentanyl, heroin, methamphetamine and cocaine. On November 20, 2020, SFPD observed Defendant in the Tenderloin. Knowing she had a court-issued stay-away, SFPD contacted Defendant. She admitted she had a stay-away order. She was arrested and searched and possessed fentanyl, cocaine, methamphetamine and heroin. She told SPFD she was in the Tenderloin selling drugs to make money to send back to Honduras. On December 17, 2020, SFPD again saw Defendant in the Tenderloin, in violation of her court-issued stay-away order. SFPD arrested her and Defendant told them she possessed

"crack".

She was arrested on the federal case on <u>February 12, 2021</u>, and released on February 19, 2021. She absconded and a bench-warrant was issued on June 10, 2021. She was brought back into custody because of her arrest in her second federal case (discussed below), at which point she remained in custody. As part of her plea agreement in the above case, Defendant acknowledged that her converted drug weight across all the incidents was at least 700 kilograms, but less than 1,000.

### D. Prior Federal Conviction – 4:22-CR-00178-YGR: Conspiracy to Distribute 40 Grams or More of Fentanyl

Defendant's conviction in this case resulted from an investigation into a fentanyl trafficking organization in the East Bay, primarily operating in Oakland and San Leandro. As part of her plea agreement in that case, Defendant admitted that she was involved in a fentanyl trafficking conspiracy. As part of her plea agreement, Defendant admitted that between April 30, 2021 and May 11, 2021, she and Mario Cruz-Calix (who, according to the bail study, is married to Defendant) were participants in the fentanyl trafficking organization. In telephone communications intercepted through a federal wire, Defendant called the leader of the organization and requested to purchase fentanyl, and Defendant agreed to re-distribute fentanyl to customers, including a woman in Daly City. Mario Cruz-Calix picked up the fentanyl for himself and Defendant.

On March 30, 2022, Defendant was arrested on a federal warrant for the case. She was brought before this Court on March 31, 2022 for her initial appearance on the new charges and a bench warrant related to her prior case. This Court ordered her detained. The Defendant's two federal cases were globally resolved. As part of the plea agreement, Defendant admitted the total weight of fentanyl attributable to her in the above case was more than 200 but less than 400 grams of fentanyl. She was sentenced to 27-months imprisonment and 3-years of supervised release. She was released from custody and to the supervision of United States Probation in November 2023.

### III.  LEGAL STANDARD

Under the Bail Reform Act of 1984, the Court must detain a defendant before trial without bail where "the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person in the community." 18

U.S.C. § 3142(e)(1). Detention is appropriate where a defendant is either a danger to the community or a flight risk; the government need not prove that both factors are present. *United States v. Motamedi*, 767 F.2d 1403, 1406 (9th Cir. 1985). A finding that a defendant is a danger to the community must be supported by clear and convincing evidence, but a finding that a defendant is a flight risk need only be supported by a preponderance of the evidence. *Id.*

"[T]he Bail Reform Act mandates an individualized evaluation guided by the factors articulated in [18 U.S.C.] § 3142(g)." *United States v. Diaz-Hernandez*, 943 F.3d 1196, 1199 (9th Cir. 2019). Those factors are: (i) the nature and circumstances of the offense charged; (ii) the weight of the evidence against the defendant; (iii) the history and characteristics of the defendant, including the defendant's character, physical and mental condition, family and community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings, as well as whether the crime was committed while the defendant was on probation or parole; and (iv) the nature and seriousness of the danger to any person or to the community that would be posed by the defendant's release. *See* 18 U.S.C. § 3142(g); *United States v. Winsor*, 785 F.2d 755, 757 (9th Cir. 1986).

Where there is probable cause that a defendant has violated an offense for which a maximum of ten years in prison or more is prescribed in the Controlled Substances Act, courts apply a rebuttable presumption that no condition or combination of conditions will reasonably assure the defendant's appearance as required and the safety of the community. *See* 18 U.S.C. § 3142(e)(3)(A). Under this scheme, the burden of production shifts to the defendant. *United States v. Hir*, 517 F. 3d 1081, 1086 (9th Cir. 2008). Even if the defendant rebuts the presumption, the presumption is not erased; instead, it remains in the case as an evidentiary finding militating against release that is to be weighted along with other relevant factors. *See id.*

### IV.   ARGUMENT

**A.   Defendant Faces a Rebuttable Presumption in Favor of Detention.**

On March 26, 2025, Defendant sold fentanyl to a UC. A criminal complaint was issued on the basis of an affidavit laying out the facts of the case. On May 1, 2025, the Honorable Donna M. Ryu signed the criminal complaint. Therefore, there is probable cause to believe Defendant committed an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled

Substances Act. As a result, there is a rebuttable presumption that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community. *See* 18 U.S.C. § 3142(e)(3)(A).

### B. Defendant Cannot Overcome the Presumption that She is a Flight Risk.

#### 1. Defendant Previously Absconded in this District

The government agrees with Pre-Trial Services that Defendant poses a substantial risk of flight which cannot be mitigated by release conditions. She poses a flight risk for several reasons. First, she recently absconded in this district before, when she was released on case #4:21-CR-00250-YGR. In that case, she was released under Pre-Trial Service' supervision on February 19, 2021, but failed to appear for her Court appearance. Just two months later, while in the wind on her federal case, Defendant was intercepted on a federal wire ordering fentanyl for sale. It was only when she was arrested on her second federal drug trafficking case that she was brought back into custody, at which point this Court ordered her detained.

The fact that Defendant previously (and recently) absconded while on pre-trial release should be very troubling to this Court. When she was finally brought back to court, it was only because she was arrested on new federal charges. Absconding while on pre-trial release and committing serious felonies while under the supervision of United States Probation demonstrates significant and repeated breaches of the Court's trust – trust that the Court must have when releasing a person. Defendant's previous conduct is indicative of what she would do if she were released in this case.

#### 2. Defendant Violated Court Order by Selling Drugs While on Federal Supervised Release and on Pre-Trial Release

Defendant is on active federal probation. Yet that did not deter her from trafficking methamphetamine and fentanyl. Additionally, when she was previously on pre-trial release on state cases, she was repeatedly arrested for engaging in the same conduct she had previously been arrested for. On multiple occasions, Defendant sold drugs in the very neighborhood she had been ordered to stay-away. Her commitment to drug trafficking has not been deterred by stay-away orders, court conditions of release, state or federal pre-trial supervision or federal supervised release. This conduct demonstrates Defendant's disregard court for orders and should concern the Court about her willingness to follow the

Court's orders in this case.

### 3. The Consequences the Defendant Faces Increase Her Flight Risk

The charges brought against Defendant are quite serious. Additionally, the evidence against Defendant is very strong, and includes recordings of Defendant selling fentanyl and methamphetamine to a UC. *See United States v. Gebro*, 948 F.2d 1118, 1122 (9th Cr. 1991) (strong evidence of guilt "makes it more likely that he will flee"). Additionally, Defendant entered the United States illegally, is not a United States citizen, and faces possible deportation. Her significant ties to Honduras, coupled with her use of *thirteen* different aliases, and possession of a Honduran passport, are also concerning. All of these factors, when taken together, demonstrate Defendant poses a significant flight risk.

### C. Defendant Cannot Overcome the Presumption She is a Danger to the Community

Defendant poses a serious danger to the community. According to the bail study, she has been arrested fifteen times since 2019, almost all in the Bay Area, and almost all for drug trafficking. Two federal drug trafficking convictions and a 27-month prison sentence has not deterred her from drug trafficking. She also has demonstrated a repeated pattern of selling fentanyl, a very dangerous drug. Two milligrams of fentanyl is considered a lethal dose. [1] Defendant sold approximately 69 grams at once to the UC. Additionally, her recent association with Jexcer Martinez-Torres and her decision not to provide the names of the two men she resides with to pre-trial services, is additional concern that she will continue to engage in her demonstrated pattern of selling drugs if released.

//
//
//
//
//
//
//
//

---

[1] https://www.dea.gov/resources/facts-about-fentanyl

UNITED STATES' DETENTION MEMORANDUM    7
4:25-mj-70526 MAG


## V. <u>CONCLUSION</u>

Defendant cannot overcome the presumption that there are no set of conditions that will reasonably assure the safety of the community or ensure her appearance at court proceedings. The Court should order Defendant detained pending trial.

DATED: March 12, 2025.                                  Respectfully submitted,

PATRICK D. ROBBINS
Acting United States Attorney

 */s/ Emily R. Dahlke*
EMILY R. DAHLKE
Assistant United States Attorney

UNITED STATES' DETENTION MEMORANDUM     8
4:25-mj-70526 MAG